```
 1                IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF SOUTH CAROLINA
 2                       CHARLESTON DIVISION

 3   UNITED STATES OF AMERICA         :
                                      :
 4             vs.                    :
                                      :
 5   DYLANN STORM ROOF                :     2:15 - CR - 472

 6
               Arraignment in the above matter held on Friday,
 7
        July 31, 2015, commencing at 11:05 a.m., before the
 8
        Hon. Bristow Marchant, in the United States Courthouse,
 9
        Courtroom VI, 85 Broad St., Charleston, South Carolina,
10
        29401.
11

12   APPEARED ON BEHALF OF THE UNITED STATES:

13       WILLIAM NETTLES, ESQ., 1441 Main St., Columbia, SC.

14       JAY N. RICHARDSON, ESQ., 1441 Main St., Columbia, SC.

15       NATHAN WILIAMS, ESQ., P.O. Box 978, Charleston, SC.

16       NICHOLAS U. MURPHY, ESQ., and PAIGE M. FITZGERALD, ESQ.,
         601 D St. NW., Washington, D.C.
17
     APPEARED ON BEHALF OF THE DEFENSE:
18
         DAVID I. BRUCK, ESQ., Washington & Lee School of Law,
19       Lexington, VA.

20       MICHAEL P. O'CONNELL, ESQ., 109 Wappoo Creek Dr.,
         Charleston, SC.
21
         ANN B. WALSH, ESQ., 145 King St., Charleston, SC.
22

23          REPORTED BY DEBRA L. POTOCKI, RMR, RDR, CRR
         Official Court Reporter for the U.S. District Court
24                         P.O. Box 835
                       Charleston, SC  29402
25                        843/723-2208
```

```
 1              THE COURT:  All right, we're on the record in the
 2   case of United States versus Dylann Storm Roof, that's
 3   Criminal No. 2:15-472.  Is this Mr. Roof here?
 4              MR. BRUCK:  Yes, sir.
 5              THE COURT:  Mr. Roof?
 6              THE DEFENDANT:  Yes.
 7              THE COURT:  Mr. Roof, the purpose of this proceeding
 8   this morning is to advise you of your rights and to advise you
 9   of the charges that have been filed against you, and to set
10   conditions for bond, if that's appropriate in your case.
11       You do have the right to remain silent, which means that
12   you don't have to say anything, and anything that you do say
13   can be used against you.
14       You understand what I've told you?
15              THE DEFENDANT:  Yes.
16              THE COURT:  You also have a right to an attorney, and
17   the right to have your attorney present at every critical
18   stage of the proceedings, including every time you're
19   questioned by the authorities, and every time you come to
20   court.  And if you desire an attorney and can not afford one,
21   one will be appointed for you.
22       You understand what I've told you?
23              THE DEFENDANT:  Yes.
24              THE COURT:  All right.  Well, let me ask first,
25   Mr. Williams?
```

```
 1                MR. WILLIAMS:  Yes, Your Honor.
 2                THE COURT:  Am I correct that counts 13 through 21,
 3     obstruction of exercise of religion resulting in death, and
 4     counts 25 through 33, use of a firearm to commit murder during
 5     and in relation to a crime of violence, carry a possible
 6     penalty of death?
 7                MR. WILLIAMS:  You are, Your Honor, that's correct.
 8                THE COURT:  But the Government has not made that
 9     decision yet, correct?
10                MR. WILLIAMS:  That's correct, Your Honor.
11                THE COURT:  All right.  Pursuant to Title 18 U.S.
12     Code Section 3005, a defendant charged with a capital crime
13     who requests counsel, is entitled to the assignment of two
14     such counsel, at least one of whom shall be learned in the law
15     applicable to capital cases.
16          So, Mr. Roof, I need to ask you, are you asking for the
17     appointment of two counsel in this case?
18                THE DEFENDANT:  Yes.
19                THE COURT:  I also have an affidavit that you have
20     submitted for the purpose of establishing indigency for costs
21     and other services.  And I need for you to understand that if
22     anything in your affidavit is untrue, that you can be charged
23     with perjury.  You understand that?
24                THE DEFENDANT:  Yes.
25                THE COURT:  You swear that everything in your
```

1   affidavit is true and correct to the best of your knowledge?
2           THE DEFENDANT:  Yes.
3           THE COURT:  I do find that you meet the
4   qualifications for indigency for purposes of further
5   proceedings in this court.
6       Now, in assigning counsel, under the statute, that would
7   be Title 18 U.S. Code Section 3005, the Court is to consider
8   the recommendation of the Federal Public Defender.
9       And I'm advised that the required consultation has been
10  undertaken in this case, is that correct?
11          MS. WALSH:  It is, Your Honor.
12          THE COURT:  And provisional appointments, pending
13  arraignment and qualification of the defendant of Attorneys
14  David Bruck and Michael O'Connell were made on July 23rd and
15  July 29th respectively.  An earlier order had also been filed
16  on June 22nd, provisionally appointing two attorneys in the
17  Federal Public Defender's office.  And as the defendant has
18  now requested and qualified for two appointed counsel, it is
19  appropriate to formalize those appointments at this time.
20      And Mr. Bruck is a professor of law at Washington and Lee
21  University School of Law, and has extensive experience
22  representing death penalty defendants in trial and appellate
23  courts, as well as the United States Supreme Court.  He has
24  also served as a Federal Death Penalty Resource Counsel to the
25  federal defender program, has chaired the National Consortium

1   for Capital Defense Training, and is director of the Virginia
2   Capital Case Clearinghouse.
3       The Court, therefore, finds that Mr. Bruck is learned in
4   the law applicable to capital cases, and appoints him as lead
5   counsel for the defendant.
6       Mr. O'Connell also has significant experience handling
7   capital cases, has served as a public defender at both the
8   federal and state levels, and has served as a lecturer at CLE
9   seminars at both the state and federal levels.
10      As such, he is also learned in the law applicable to
11  capital cases.  And Mr. O'Connell is, therefore, appointed as
12  the defendant's second assigned counsel in this case.
13      The Court further finds that this case presents the
14  necessary extraordinary circumstances to allow for a waiver of
15  the application requirements set forth in Local
16  Rule 57.I.03(B), the local rules this District Court.
17      The Court will now also leave in place the previous
18  provisional appointment of Federal Public Defenders Ann Walsh
19  and William Nettles, pending further order of the District
20  Judge with respect to those appointments.
21      Has the defendant received a copy of the indictment that's
22  been filed in this case?
23              MR. BRUCK:  Yes, he has, Your Honor.
24              THE COURT:  Just to summarize that indictment, it is
25  a 33-count indictment.  The defendant is charged in counts one

through nine with Hate Crime Act resulting in the deaths of Reverend Sharonda Coleman-Singleton, Cynthia Hurd, Susie Jackson, Ethel Lee Lance, Reverend DePayne Middleton-Doctor, Reverend Clementa Pinckney, Tywanza Sanders, Reverend Daniel Simmons, Senior, and Myra Thompson.

In counts ten through 12, the defendant is charged with a hate crime involving an intent to kill with respect to three individuals; a minor, together with Felicia Sanders and Polly Sheppard.

In counts 13 through 21, the defendant is charged with obstruction of the exercise of religion, resulting in death of the aforementioned deceased victims. As previously mentioned, those counts also carry a possible sentence of death.

Counts 22 through 24, the defendant is charged with obstruction of exercise of religion involving an attempt to kill, and use of a dangerous weapon, with respect to the three aforementioned surviving victims.

And then in counts 25 through 33, the defendant is charged with use of a firearm to commit murder during and in relation to a crime of violence related to the nine deceased victims. Again, as previously indicated, those counts carry a possible sentence of death.

There are also special findings made with respect to the charges in the indictment.

And, Mr. Bruck, have you had a chance to go over a copy of

1      this indictment with your client?
2              MR. BRUCK:  Yes, we have, Your Honor.
3              THE COURT:  Does he waive reading?
4              MR. BRUCK:  Yes, he does waive reading.
5              THE COURT:  Formal reading?
6              MR. BRUCK:  Yes, he does.
7              THE COURT:  Mr. Roof, you understand what it is
8      you're charged with and why you're here in court today?
9              THE DEFENDANT:  Yes.
10             THE COURT:  With respect to the penalties for those
11     charges, charges one through nine, Hate Crime Act resulting in
12     death, those counts provide that where death results from the
13     offense, imprisonment for any term of years or for life, a
14     fine of $250,000, a term of supervised release of five years,
15     and a special assessment of $100.
16         With respect to counts ten through 12, each of those
17     counts charges or carries the possible penalty of imprisonment
18     for any term of years or for life, a fine of $250,000, a term
19     of supervised release of five years, and a special assessment
20     of $100.
21         With respect to counts 13 through 21, obstruction of
22     exercise of religion resulting in death, the statute provides
23     that if death results from acts committed in violation of this
24     section, a sentence of death or imprisonment for any term of
25     years or for life, a fine of $250,000, a term of supervised

1   release of five years, and a special assessment of $100.
2   　　With respect to counts 22 through 24, obstruction of
3   exercise of religion involving an attempt to kill, and use of
4   a dangerous weapon, the statute provides that acts committed
5   in violation of this section, including attempt to kill,
6   imprisonment for any term of years or for life, a fine of
7   $250,000, term of supervised release of five years, and a
8   special assessment of $100.
9   　　If acts committed in violation of this section include the
10  use, attempted use or threatened use of a dangerous weapon,
11  imprisonment for not more than 20 years, a fine of $250,000, a
12  term of supervised release of three years, and a special
13  assessment of $100.
14  　　And finally, with respect to counts 25 through 33, use of
15  a firearm to commit murder during and in relation to a crime
16  of violence, if the killing is a murder, provides a sentence
17  of death or imprisonment consecutive to any other term of
18  imprisonment for any term of years or for life, a fine of
19  $250,000, a term of supervised release of five years, and a
20  special assessment of $100.
21  　　You understand your maximum possible penalties you face
22  under this indictment?
23  　　　　THE DEFENDANT:  Yes.
24  　　　　THE COURT:  Let the defendant enter a plea of not
25  guilty at this time.

1              MR. BRUCK:  I'm sorry, Your Honor?
2              THE COURT:  He's going to enter a plea of not guilty
3     at this time to these charges.
4              MR. BRUCK:  We would like to address the Court on
5     that issue.
6              THE COURT:  All right, go ahead.
7              MR. BRUCK:  Mr. Roof has told us that he wishes to
8     plead guilty.  However, the Government has not yet decided
9     whether it is going to seek the death penalty.  And we
10    understand that that process takes some time, takes some time
11    for the Government to make that determination.
12         Until we know whether the Government will be asking for
13    the death penalty, we are not able to advise Mr. Roof to enter
14    a plea of guilty.  And for that reason, we understand that the
15    Court will enter a plea on his behalf.
16             THE COURT:  I'll just direct that a plea of not
17    guilty be entered at this time for the defendant, based on
18    your comment to the Court, Mr. Bruck.
19             MR. BRUCK:  Thank you.
20             THE COURT:  Unless the Court's notified otherwise,
21    the file will reflect that the defendant wishes to be present
22    at all pretrial motions, and at this point expects a jury
23    trial on the charges.
24         Final date for filing motions in the case is August the
25    20th.  This case has been assigned to Judge Richard Gergel, so

1  the parties will be notified of further scheduling in this
2  case from his office.
3      And with respect to the issue of bond, I note Mr. Roof is
4  here on a writ from the State. What's the Government's
5  position?
6          MR. RICHARDSON: Your Honor, we would move to detain
7  Mr. Roof. I understand that he wishes to waive any detention
8  hearing at this time.
9          MR. BRUCK: That is correct.
10          THE COURT: All right. Mr. Williams, I'm sorry, I
11 was addressing you, but it doesn't matter. But we do have the
12 Crime Victims Rights Act. Are there any victims or
13 representatives of victims who want to make a statement today?
14          MR. WILLIAMS: There are, Your Honor. We met with
15 and notified the victims to be here today. We met with them
16 prior to today's hearing. There are some people -- obviously,
17 Your Honor, there's large support for the victims in this
18 case. I don't think everybody here would like to speak, but I
19 do think some people will.
20      Miss Whaley, our victim advocate, can walk them to the
21 podium, and then they can tell Your Honor who they are.
22          THE COURT: Mr. Roof, counsel, can be seated.
23      I'd be happy to hear from anyone who would like to make a
24 statement.
25      Yes, sir?

1           MR. JOHNSON:  Good morning, Your Honor, my name is
2    Wilbur Johnson, I am counsel for Mother Emanuel AME Church.
3    We'd just like to thank, on behalf of the Church itself, thank
4    Mr. Nettles, Mr. Richardson, Mr. Williams and others in the
5    U.S. Attorney's office, United States Attorney's office, South
6    Carolina division and the district.  Also, all of the
7    investigating authorities for all of their efforts thus far
8    with respect to this matter.  The Church looks forward to
9    participating in this matter going forward and working with
10   the U.S. Attorney's office and the prosecuting authorities to
11   bring this matter to closure.
12       Thank you.
13           THE COURT:  Thank you, sir.
14       Yes, sir?
15           MR. HAYES:  How are you doing, Your Honor, my name is
16   Tyrone Sanders, father of Tywanza and a nephew of Susie
17   Jackson.
18       I don't know what's going to happen to this young man.
19   But for the rest of his life, I just want him to sort of have
20   a thought of my thoughts.  I have been hurt and saddened by
21   what he's accused of doing.  But I just want him to think for
22   the rest of his life, my thoughts towards him and about him.
23   To just think, just think, and just continue to think of what
24   I'm thinking about him.
25       That's all I want to say.

1        THE COURT: Thank you, sir.
2        MR. SINGLETON: Good morning, Your Honor, my name is
3   Leroy Singleton. Myra Thompson is my sister. And I just want
4   to stand before you and say that on behalf of my brother
5   Jerome, my brother Tiny, my sister Ruby, my entire family, we
6   miss her. We miss her a whole lot.
7        But we thank God for grace and for mercy. I thank God for
8   the change that came in my life. And I thank God for watching
9   over us as kids, we had a difficult time, but he watched over
10  us and brought us this far. And we will continue to trust
11  God. And just a heavy heart right now. But we're going to
12  continue to trust God. We hold no ill will toward this young
13  man. We'll let the system work itself out. And God alone
14  give us strength to a higher calling and let our light shine.
15       But I just want to just kind of say -- it gets me
16  emotional when I'm in church, too -- but I thank God for the
17  opportunity to stand before you just to say that.
18       Thank you.
19            THE COURT: Thank you, sir.
20            MR. CURRY: Your Honor, if it pleases the Court, I'm
21  Eduardo Curry. I represent the Rt. Rev. Richard Franklin
22  Norris, presiding preacher of the Seventh Episcopal District
23  of the African Methodist Episcopal Church. In addition, we
24  represent the presiding elder of the Edisto District of the
25  South Carolina AME conference, Rev Dr. Norvel Goff, and the

1      connectional members, residual members of the African
2      Methodist Episcopal Church.
3              Judge, our Church is watching internationally and
4      worldwide.  We want justice to be done.  We are interested in
5      participating in this activity with regard to what happens.
6      And we want to make sure that our churches and our
7      connectional people are treated properly, and the memory of
8      our victims maintained.
9                   THE COURT:  Thank you, sir.
10                  MR. GRAHAM:  Good morning, Your Honor, my name is
11     Melvin Graham.  This is my brother, Malcolm Graham.  We're
12     just here to give voice to Cynthia Graham, Cynthia Graham
13     Hurd.  We want to give her a voice, now that she can't speak
14     for herself.  We want her name to be heard so that it
15     resonates.
16          Thank you.
17                  THE COURT:  Thank you, sir.
18          Anyone else?
19                  MR. WILLIAMS:  Thank you, Your Honor.
20                  THE COURT:  I do have --
21                  MR. WILLIAMS:  Your Honor, there's one more person.
22                  THE COURT:  I'm sorry.
23                  MS. DOCTOR:  Hello, Your Honor.
24                  THE COURT:  Yes, ma'am?
25                  MS. DOCTOR:  I'm the daughter of Reverend DePayne

1    Middleton-Doctor.  And on behalf of my sisters, I would like
2    to express, you know, how great a woman my mother was.
3        And I would like to let this young man know that even
4    though he has taken the most precious thing in my life, he
5    will not take my joy.  Satan will not win.  And I pray that
6    the Lord have mercy on his soul.
7            THE COURT:  Thank you, ma'am.
8        Anyone else?
9            MR. WILLIAMS:  No, thank you, Your Honor.
10           THE COURT:  I do have a pretrial report, I don't know
11   if counsel have been provided a copy of that.
12           MR. BRUCK:  We have.
13           THE COURT:  The defendant is waiving the issue of
14   detention at this time, correct?
15           MR. BRUCK:  He is not contesting it, Judge.
16           THE COURT:  Well, all right, we'll enter a detention
17   order.
18       Is there anything else we need to do in this case today?
19           MR. WILLIAMS:  Not by the Government, Your Honor.
20           THE COURT:  Anything else from defense counsel?
21           MR. BRUCK:  No, sir.
22           THE COURT:  Thank y'all.
23
24       (Court adjourned at 11:25 a.m.)
25

REPORTER'S CERTIFICATION

I, Debra L. Potocki, RMR, RDR, CRR, Official Court Reporter for the United States District Court for the District of South Carolina, hereby certify that the foregoing is a true and correct transcript of the stenographically recorded above proceedings.

S/Debra L. Potocki
_____

Debra L. Potocki, RMR, RDR, CRR