**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

          Plaintiff(s),          **CASE NUMBER: 05-80025**
                                      **HONORABLE VICTORIA A. ROBERTS**
v.

**D-1 TIMOTHY DENNIS O'REILLY,**

          Defendant(s).
_____/

**ORDER**

**I.    BACKGROUND AND PROCEDURAL HISTORY**

    **A.    O'Reilly's Motion to Appoint Firewall Counsel**

On September 1, 2009, Timothy O'Reilly filed a "Motion to Appoint AUSAs From Another District as 'Firewall' in Order to Insure Prosecution's Strict Compliance with FRCP 12.2, and Supporting Brief." (Doc. #378). O'Reilly said the Court should consult with defense counsel (and not the Government), and appoint Assistant United States Attorneys ("AUSAs") from the Western District of Michigan, the Northern District of Ohio, or the Western District of Pennsylvania, to serve as firewall attorneys. They would manage the Government's mental health experts.

The Court granted O'Reilly's motion on October 27, 2009, and ordered the Government to find one AUSA from outside this district, sufficiently experienced in death penalty litigation, who has time and resources to devote to the job. (Doc. #402).

In a letter dated November 6, 2009, the Government nominated Steve Holtshouser from the Eastern District of Missouri:

1

Mr. Holtshouser has been an AUSA for 24 years and currently supervises half of the White Collar Division at his U.S. Attorney's Office. He has been involved in 8 federal capital trials and 2 capital Section 2255 motions. He was "first chair" on one of the death penalty cases and "second chair" on two death penalty cases. Mr. Holtshouser has been appointed and served as a firewall AUSA in three death penalty cases, including the well publicized case of *United States v. Alfonso Rodriguez*, in Fargo, North Dakota. He has taught the Capital crimes seminar to federal prosecutors at the National Advocacy Center in Columbia, South Carolina.

Mr. Holtshouser currently sits on the Attorney General's Capital Crimes Review Committee, and has done so for several years. He is also an adjunct professor at Washington University School of Law in St. Louis, where he teaches advanced trial advocacy.

On November 17, 2009, O'Reilly filed a "Motion for Disclosure of all Information Associated with the Death Penalty Authorization Decision and Decision-Making Process in this Case Including Assignments[sic] of AUSA Steven Holtshouser to the Capital Crimes Review Committee and to Disqualify Designated Government Firewall Counsel." (Doc. #406). O'Reilly sought an order that provides for: (1) disclosure of specific information relating to the death penalty authorization process; (2) disclosure of specific information relating to the assignment of Mr. Holtshouser to the Capital Crimes Review Committee; and (3) Mr. Holtshouser's disqualification as firewall counsel.

### B. O'Reilly's Abandonment of the Firewall Counsel Procedure

In an e-mail dated December 18, 2009, defense counsel suggested the procedure used in *United States v. Minerd*, 197 F.Supp.2d 272 (W.D. Pa. 2002), is better than the firewall counsel procedure: "there is nothing that compels [the firewall counsel procedure] and as this case demonstrates[,] it can provide an extra layer of unnecessary litigation."

### C. Meetings Regarding Procedures for Mental Health Evidence

2

On December 30, 2009, the Government filed a "Request for [an] Informal Status Conference to Allow the Parties to Discuss with the Court Possible Procedures for Dealing with Mental Health Evidence." (Doc. #434). This motion was denied on January 4, 2010 (Doc. #436):

> Defense counsel must forward its proposed procedures for Fed. R. Crim. P. 12.2 compliance to the Government, and conference with the Government during the week of January 4, 2010. The parties must discuss the Government's request to appoint Assistant United States Attorney Steven Holtshouser to the role of "firewall counsel," defense counsel's proposal that the Court adopt the procedures for mental health evidence used in *United States v. Minerd*, 197 F.Supp.2d 272 (W.D. Penn. 2002) – "tweaked" slightly to conform to Fed. R. Crim. P. 12.2 – and any other procedure that could potentially suffice to handle Timothy O'Reilly's mental health evidence in a manner that is agreeable to the parties.
>
> Immediately after the conference, defense counsel must inform the Court whether the parties reached an agreement. If an agreement is reached, it must be reduced to writing in a Stipulated Order. If an agreement is not reached, the Court may have an informal status conference. Alternatively, the Court may hear argument on O'Reilly's "Motion for Disclosure of all Information Associated with the Death Penalty Authorization Decision and Decision-Making Process in this Case Including Assignments[sic] of AUSA Steven Holtshouser to the Capital Review Committee and to Disqualify Designated Government Firewall Counsel." The Court may allow the parties to supplement these motion papers to include additional recommendations concerning procedures available to handle mental health evidence.

On January 13, 2010, O'Reilly submitted a "Report to the Court Regarding Meeting of Counsel Concerning 12.2. Procedures." (Doc. #437). O'Reilly says:

> The parties discussed the Minerd procedures as well as the potential for Mr. Holtshouser to serve as firewall counsel.
>
> The government believes that a firewall counsel is preferable, while the defense prefers a Minerd type approach.
>
> . . .
>
> The parties discussed the defendant's proposed 12.2 procedures under

the Minerd approach. In the event the Court adopts a Minerd type approach, while no agreement was reached at the conference as to the specific procedures, the parties will continue to negotiate.

On January 22, 2010, the Court ordered the parties to continue to negotiate, and submit a report to the Court by February 5, 2010. (Doc. #439).

On February 9, 2010, O'Reilly submitted his "Position Concerning 12.2 Procedures." (Doc. #442). He requests oral argument as well as the opportunity to meet with the Court, *in camera* and *ex parte*, to explain the reasons for his position. The Court finds neither oral argument nor a meeting is necessary.

The Government submitted its "Position Concerning 12.2 Procedures" on February 12, 2010. (Doc. #443).

### D. The Court's Abandonment of the Firewall Counsel Procedure

Because O'Reilly initially requested the appointment of firewall counsel, and now abandons that request, *See* e-mail dated December 18, 2009 and Report dated January 13, 2010, the Court **WITHDRAWS** its Order granting O'Reilly's motion (Doc. #402) and, **STRIKES** O'Reilly's motion to appoint firewall counsel (Doc. #378).

In addition, O'Reilly's motion for disqualification of Mr. Holtshouser (Doc. #406) is **MOOT**.

### II. PROCEDURE FOR DISCLOSURE OF MENTAL HEALTH EVIDENCE

The Court reviewed the parties' positions concerning the procedure for disclosure of mental health evidence. The Court now adopts the following procedure:

1. O'Reilly must give written notice to the Government on or before March 8, 2010, if he intends to introduce expert evidence relating to a mental disease or defect or any other mental condition bearing on the issue of punishment ("expert mental health testimony"). *See* Order dated October 27, 2009.

4

2. O'Reilly's notice of intent to introduce expert mental health testimony must include the kinds of mental health expert(s) O'Reilly will call – including the expert(s) who will base their opinions on a review of records and not a personal examination of O'Reilly – as well as the nature of the test(s) the expert(s) will perform or have performed. *See United States v. Umana*, 2009 WL 2489309 at *3 (W.D.N.C. August 12, 2009); *see also United States v. Lujan*, 530 F.Supp.2d 1224, 1239 (D.N.M. 2008) (same); *United States v. Wilson*, 493 F.Supp.2d 348, 353 (E.D.N.Y. 2006) ("Disclosure of the kinds of mental health experts the Defendant will call and the nature of the tests these experts will be performing is sufficient to provide meaningful notice in compliance with Rule 12.2. It is unreasonable to require more"); *United States v. Sampson*, 335 F.Supp.2d 166, 242 (D.Mass. 2004) (defense counsel must include "the kinds of mental health professionals who have evaluated [the defendant] (e.g., forensic psychiatrist, neuropsychologist, clinical psychologist) as well as the specific nature of any testing that these experts have performed (e.g., MMPI-2, WAIS-2, etc.) in the course of their evaluations of [the defendant]").

3. The Court will consider any requests by O'Reilly to amend his notice of intent to introduce expert mental health testimony. O'Reilly may not file a request to amend his notice after May 15, 2010.

4. If O'Reilly files a notice that he intends to introduce expert mental health testimony at the penalty phase, O'Reilly is subject – upon the Government's motion – to rebuttal examination(s) by mental health professional(s) selected by the Government. *See* Fed. R. Crim. P. 12.2(c)(1)(B). The Government's examination(s) must take place before jury selection begins, now set for June 1, 2010.

5. Rebuttal experts must file their results, incorporated into reports ("Reports"), with the Court, under seal, within 15 days after completion of the rebuttal examination(s). *See* Fed. R. Crim. P. 12.2(c)(2) (Reports of any rebuttal examination must be sealed).

6. If the Government requests a written summary of testimony that O'Reilly's experts will provide and O'Reilly complies, the Government must, at O'Reilly's request, give O'Reilly a written summary of testimony its experts will provide concerning O'Reilly's mental condition. *See* Fed. R. Crim. P. 16(a)(1)(G).

7. Reports will **only** be released to, or discussed with, the Government or the defense, if the jury reaches a verdict of guilty on a capital charge in the guilt phase of trial, and O'Reilly confirms his intent to offer expert mental health testimony at the penalty phase. All communications between members of the prosecution team and the Government's expert(s) must be audio taped. The tapes must be filed under seal with the Court.

8. O'Reilly must file a notice confirming or withdrawing his intent to introduce expert mental health testimony, at least 10 days before the penalty phase begins. The 10-day requirement gives the Court time to release the Reports; and, O'Reilly time to analyze them, and submit objections. *See* paragraphs 13 and 22, below.

9. If O'Reilly withdraws his notice of intent to introduce expert mental health testimony before the penalty phase, the Reports will not be released to either party.

10. The mental health professional(s) conducting the examination(s) for the Government will not discuss the examination(s) or any information derived from the examination(s) with support staff, agents, or attorneys associated with the Government or the defense, unless the Reports have been released to the Government and defense counsel. "Information derived from the examination(s)" includes statements O'Reilly made in the course of the examination.

11. Before conducting any testing or examination, mental health professionals must sign a written confirmation, demonstrating that they understand their obligation not to discuss the examination, or any information derived from the examination, with any person associated with the Government or the defense, including attorneys, support personnel such as paralegals, or other agents, and that any violation of this Order may be punishable by contempt of this Court.

12. The Court will review the Reports for any exculpatory evidence that should be provided to defense counsel. If the Court finds exculpatory information, it will provide that information to the parties. The Court denies O'Reilly's request that it allow him the opportunity to identify the areas or information he believes are exculpatory; the Court is capable of making the identification.

13. If O'Reilly is found guilty on a capital charge, and he files notice confirming his intent to offer expert mental health testimony at the penalty phase, the Reports will be released to both parties within 24 hours of O'Reilly's notice. *See* Fed. R. Crim. P. 12.2(c)(2) (both parties receive the rebuttal reports if the defendant is found guilty of a capital crime, and the defendant confirms his intent to offer expert evidence on his mental condition). O'Reilly has 48 hours after the parties receive the Reports to withdraw his notice of intent to introduce expert mental health testimony. If O'Reilly does not withdraw his notice within this time frame, he must disclose to the Government the Reports from any examination on mental condition conducted by O'Reilly's expert(s), about which he intends to introduce expert mental heath testimony. *See* Fed. R. Crim. P. 12.2(c)(3) (the defendant does not need to disclose the reports of any examination conducted by his expert(s), until after the parties receive the rebuttal reports).

14. Even if O'Reilly confirms his intent to offer expert mental health testimony, he may withdraw the notice of intent to offer such testimony at any time before

6

actually introducing expert mental health testimony. If O'Reilly withdraws the notice, neither the fact of notice, the Reports, nor any facts only disclosed in the Reports, will be admissible against O'Reilly.

**PURPOSE OF THE REBUTTAL EXAMINATION(S) AND O'REILLY'S STATEMENTS DURING THE REBUTTAL EXAMINATION(S)**

15. The sole purpose of the Government's rebuttal examination(s) must be to confirm or rebut expert mental health testimony presented by O'Reilly. No statement that O'Reilly made in the course of the rebuttal examination(s), no testimony by the expert(s) based on the statement, and no other fruits of the statement, can be introduced or used by the Government for any purpose, except to rebut expert mental health testimony O'Reilly offers during the penalty phase on the issue of his mental condition. *See* Fed. R. Crim. P.12.2(c)(4).

**REBUTTAL EXAMINATION PROCEDURES**

16. Before any expert for the Government conducts rebuttal mental health testing, the Government must provide defense counsel a list of tests its expert(s) wish to perform. The Government's rebuttal testing and evaluation must take place in the facility where O'Reilly is incarcerated. If the testing and evaluation cannot take place there, or if either party objects to the testing and evaluation taking place there, the Court will decide where the testing and evaluation will occur.

17. The Government must provide defense counsel with at least five days advance notice of the name(s) and profession(s) of the Government expert(s) who will perform rebuttal examinations, and the tests the expert(s) expect to perform.

18. If O'Reilly objects to any expert, or to a particular test, the parties must diligently attempt to resolve the objection. If no resolution is reached, O'Reilly must file his objection with the Court before the end of three business days after receiving notice of the expert or test from the Government. The Court will set a hearing. No rebuttal examination or testing can be conducted, until the Court has held the required hearing. At the hearing, the Court will not place a burden on O'Reilly to prove the expert or test should not be used, nor will the Court favor the Government's proposed expert or test.

19. If O'Reilly does not withdraw his notice of intent to introduce expert mental health testimony within 48 hours after the parties receive the Reports, he must provide the Government with all information he gave to the defense expert(s).

**RECORDING OF THE EXAMINATION AND LIMITATIONS ON TESTING BY THE GOVERNMENT'S EXPERT(S)**

7

20. Defense counsel may arrange for any rebuttal examination to be audio and/or video taped. *See United States v. Johnson*, 362 F.Supp.2d 1043, 1090-91 (N.D. Iowa 2005):

> "the court concludes that [defendant] 'undoubtedly ha[s]' a Sixth Amendment right to consultation with counsel concerning mental examinations. However, the court also concludes that [defendant's] Sixth Amendment right to counsel will be adequately protected by advance notice of testing and the recording of [the] examinations and interviews; there is no need for either defense counsel or a defense expert to be present during such testing."

(Citation omitted). The Government's expert(s) must provide the tapes to defense counsel by same-day or next-day delivery upon the conclusion of each session. Defense counsel may review the tapes once he receives them.

21. The Government's expert(s) can not administer more than one test to measure the same mental function. Further, Government experts can only subject O'Reilly to examination or testing that was performed by defense experts.

**OBJECTION TO THE GOVERNMENT'S REPORTS**

22. If O'Reilly has an objection to the admissibility of the Government's Reports, he must inform the Government of his objection, and the parties must attempt to resolve objections before involving the Court. If an agreement cannot be reached, O'Reilly's objection will be resolved by the Court before the penalty phase begins.

**REMEDIES FOR O'REILLY'S NON-COMPLIANCE**

23. O'Reilly's failure to: (a) provide notice of his intent to present expert mental health testimony; (b) participate in a Court-ordered rebuttal examination; or (c) confirm his intent to present expert mental health testimony, may result in forfeiture of his right to present expert mental health testimony, or any other remedy the Court deems appropriate, consistent with Rule 12.2(d)(1).

**IT IS ORDERED**.

s/Victoria A. Roberts
Victoria A. Roberts
Dated: February 19, 2010          United States District Judge

| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on February 19, 2010.<br><br>s/Carol A. Pinegar<br>Deputy Clerk |
|---|