IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Criminal No. 2:15-CR-00472-RMG |
| ) | |
| v. ) | |
| ) | |
| DYLANN STORM ROOF ) | |

**GOVERNMENT'S SUPPLEMENTAL REQUEST FOR DISTRICT-WIDE JURY VENIRE IF DEFENDANT REFUSES TO WAIVE VENUE CHALLENGE**

On June 7, 2016, the defendant requested a trial beginning with jury selection on November 7, 2016. The Court granted the defendant's request and subsequently issued a variety of scheduling orders. One such order required the defense to notify the court of its preference for the geographic scope of the venire along with a statement about the defendant's intent to move for a change in venue. DE 179. Initially, Roof's counsel requested a venire drawn from Area C without answering the corollary question about challenges to venue. DE 190. The government responded to this request, stating that, absent a waiver of any venue challenge by the defendant, the government believed the Court should consider using a district-wide venire. DE 194. After the Court reiterated its order that the defendant set forth its position on venue, DE 192, the defendant stated that he had no *present* intention to challenge venue. DE 196. The Court then directed the government to file a memorandum more fully setting forth good cause for using a district-wide venire. DE 215.

The Government continues to encourage the Court to use a Charleston-area (*i.e.*, Area C) jury venire but only if Roof affirmatively waives any venue challenge to having the trial in

1

Charleston with a venire from Area C. Absent such a waiver, the Court should utilize a district-wide venire.

The Jury Selection Plan for the District of South Carolina permits a district-wide (or centralized) petit jury venire upon order of the Chief Judge for good cause. *See* Jury Selection Plan at 6 (3:14-mc-338).[1] Good cause exists to use of a district-wide panel in this case on at least two grounds: (1) the state-wide impact Defendant Roof's attack at Mother Emanuel as well as the geographic scope of Roof's actions leading to his massacre of parishioners; and (2) a district-wide venire protects the Court, the government, the victims, and the public from an eleventh-hour attempt by Roof to derail the trial that he requested start on November 7.

In adopting the use of a district-wide jury venire, courts in this district have considered both the impact of the crime and the geographic scope of the criminal activities. The self-evident state-wide impact of Defendant's attack on the parishioners of Mother Emanuel on June 17, 2015, was seen, for example, in the demonstrations that led to the removal of the confederate battle flag from the state house grounds and memorials at events across South Carolina. Moreover, victims and their families hail from outside the Charleston area, though most do have ties to the Charleston area. In addition to the impact of the attack, much of Roof's planning and preparation for the attack occurred in the Columbia area. And after the attack, Roof fled across South Carolina before being arrested in North Carolina. While the most significant impact and the core criminal activity were both focused in the Charleston area, the overall impact and scope

---

[1] Trial judges have the discretion to order that a jury be drawn from an entire federal district or from a division of that district. *See generally United States v. Florence*, 456 F.2d 46, 50 (4th Cir. 1972) (upholding conviction from trial with pool of potential jurors drawn from outside the division where defendant lived); *United States v. Grisham*, 63 F.3d 1074, 1081 (11th Cir. 1995) (upholding conviction where jury selection was district-wide).

2

of Roof's criminal conduct extend to the entire state, providing good cause for this Court to use a district-wide jury venire.

While the traditional factors of impact and scope of criminal conduct justify a district-wide venire, its use is also justified by the need to protect against a last-minute venue challenge. Counsel for Defendant Roof have declined to affirmatively waive a challenge to venue while simultaneously requesting that the Court use a Charleston-area venire. *See* DE 196 (stating only that the "defense … has no *present* intention of filing a motion for change of venue") (emphasis added). Because of this, should the defendant later decide to challenge venue, the Court would be faced with evaluating the community from which the Area C venire is drawn to determine if venue is appropriate. Defendant's attempt to request a local venire while attempting to reserve a future venue challenge should be rejected. This is a matter that could easily be resolved now with an election by the defense. Otherwise, the Court should utilize a district-wide venire now to insulate this case from a later venue challenge.

The Charleston area, as compared to the rest of the district, has particularly felt the effects of Roof's attack. Quite naturally, Charleston-area news outlets have spent more time focused on coverage related to the attack and its consequences. Moreover, most of the parishioners who were murdered and those who survived Roof's attack, as well as others directly impacted by Roof's crimes, have strong ties to the Charleston area. As a result of both the degree of publicity and the potential for a personal relationship with an individual substantially impacted by the attack, a jury venire from Area C likely will have a higher proportion of individuals whose personal situation may lead to the conclusion that they could not set aside their own experiences to be a fair and impartial juror. After requesting an Area C venire, Roof's

counsel may change tack and raise issues concerning a Charleston-area jury in a challenge to venue. Indeed, the possibility of just such an approach appears to be what leads Roof to refuse to affirmatively waive a subsequent challenge to venue.[2]

Should Roof make an eleventh-hour challenge to venue, this Court will be called upon to evaluate, among other things, the size and characteristics of the community from which the venire is drawn. *See Skilling v. United States*, 561 U.S. 358, 384-85 (2010) (distinguishing the diverse 4.5 million people eligible for jury service in that case with the much smaller and insular community in *Rideau v. Louisiana*, 373 U.S. 723 (1963)); *In re Tsarnaev*, 780 F.3d 14, 21 (1st Cir. 2015) (likening Boston to the large and diverse Houston venire at issue in *Skilling*, in contrast to the smaller venire of 150,000 at issue in *Rideau*). In this case, a district-wide venire's broader geographic scope, more varied publicity exposure, and overall characteristics will substantially assist the Court in evaluating a venue challenge.[3] Thus, without a waiver of any venue challenge by Roof, the government requests this Court use a district-wide venire to avoid the waste of resources and ensure that the scheduled trial not be interrupted.

---

[2] Roof's counsel was recently quoted in speaking to the press about potential problems with jury selection, claiming that recent statements by Solicitor Scarlett Wilson risked misleading potential jurors. *See* Andrew Knapp, *Seeking earlier state date, solicitor says Dylann Roof federal trial lacks 'relevance,'* Post and Courier (Jun. 29, 2016) (accessed at http://www.postandcourier.com/20160628/160629432/seeking-earlier-state-date-solicitor-says-dylann-roof-federal-trial-lacks-relevance).

[3] While the government does not believe a venue challenge would prevail at any time, this Court should consider the cost – in money, time and lost productivity – and the inconvenience that would result if a last-minute venue challenge was granted. *See* Joint Proposed Jury Procedures (June 23, 2016) (describing the multitude of costly steps to arrange for a jury to be present on November 7: *e.g.*, mailing questionnaires to 1200-1500 individuals; summoning that number of prospective jurors to travel to complete case-specific questionnaires; devoting multiple days court time to completion of the case-specific questionnaire process; and requiring the clerk's office, counsel, and the court to address the array of jury selection steps set forth in advance of November 7).

* * *

For the reasons set forth above, the Court should use a district-wide venire to select the jury in this case.

                        Respectfully submitted,

                        BETH DRAKE
                        ACTING UNITED STATES ATTORNEY
                        DISTRICT OF SOUTH CAROLINA

                        BY: s/*Julius N. Richardson*
                        JULIUS N. RICHARDSON (ID #9823)
                        NATHAN WILLIAMS
                        Assistant United States Attorneys
                        1441 Main Street, Suite 500
                        Columbia, SC 29201
July 3, 2016                 Tel. (803) 929-3000