IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| United States of America | ) | Criminal No. 2:15-472-RMG |
| | ) | |
| v. | ) | **ORDER** |
| | ) | **UNDER SEAL** |
| Dylann Storm Roof. | ) | |
| | ) | |

This matter is before the Court on Defendant's motion to strike the death penalty as a possible punishment (Dkt. No. 665). For the reasons set forth below, the Court denies the motion.

Defendant argues the death penalty should be struck because the Government's mental health evaluator designated under Rule 12.2 of the Federal Rules of Criminal Procedure, Dr. Park Dietz, interfered with Defendant's attorney-client relationship, in violation of Defendant's Sixth Amendment rights. (Dkt. No. 665 at 1–3.) The Court will assume that deliberate governmental interference in a criminal defendant's attorney-client relationship violates the Sixth Amendment. *See United States v. Morrison*, 449 U.S. 361, 364 (1981) (assuming Sixth Amendment violation by alleged interference with the attorney-client relationship). To state a claim for relief for such interference, a defendant must show he was prejudiced by the violation. *See id.* at 365; *United States v. Chavez*, 902 F.2d 259, 266 (4th Cir. 1990). Defendant, however, has not made a colorable showing either that the Government deliberately interfered with the attorney-client relationship or that prejudice resulted. Because Defendant has shown neither deliberate interference with the attorney-client relationship nor prejudice, the Court does not reach whether prejudicial inference with the attorney-client relationship would entitle a capital defendant to relief from the death penalty as a possible punishment.

The deliberate interference at issue, according to defense counsel, is that Dr. Dietz "disclosed the defense experts' diagnoses to our client during his examination" and "also reviewed

-1-

the defense exhibit list with our client and commented on individual exhibits." (Dkt. No. 655 at 1–2.) For purposes of this motion, the Court will assume the truth of those allegations, because it is not possible for the Government to contact Dr. Dietz about his examination before a verdict in the guilt phase. *See* Fed. R. Crim. P. 12.2(c). However, the Court agrees with the Government that it was simply impossible for Dr. Dietz to disclose the defense experts' diagnoses to Defendant, because those diagnoses were not disclosed by the defense at the time of Dr. Dietz's interaction with Defendant. (Dkt. No. 742 at 2–3.) Construing Counsel's allegation in the light most favorable to Defendant, Dr. Dietz disclosed information from Defendant's supplemental Rule 12.2 notices.

Even when the truth of defense counsel's allegations is assumed (to the extent they are factually possible), Defendant has failed to state a colorable claim for relief. There is nothing improper about Dr. Dietz revealing to Defendant the contents of Defendant's own filings in the course of an evaluation meant to discover evidence regarding the claims and evidence listed in those filings. To the contrary, one would reasonably expect that Defendant would have been asked about the claimed mental health conditions as part of the performance of a standard medical history evaluation.

Counsel also fails to establish any prejudice from Dr. Dietz's disclosure to Defendant. Even if it were improper for Dr. Dietz to disclose to Defendant the contents of his own Rule 12.2 notices and exhibit lists, it is impossible for those disclosures to constitute prejudice. The Government asserts that "[t]o show prejudice, the defense would have to establish that the government evaluator's discussions with the defendant . . . caused the rupture in the attorney-client relationship." (Dkt. No. 742 at 6.) That may be necessary, but it is not sufficient. Prejudice does not simply mean "harm" or "damage." Prejudice is "[d]amage or detriment *to one's legal rights or claims*." Black's Law Dictionary (10th ed. 2014) (emphasis added). A competent, adult

-3-

defendant is not prejudiced by learning the contents of his own court filings or his counsel's intended defense strategy—even if he chooses to respond to that knowledge in an unfortunate manner. Revealing to Defendant Defendant's own filings or his own trial strategy simply cannot violate the Sixth Amendment right to counsel. Critically, although defense counsel take exception to Dr. Dietz's purported phrasing in one instance (as they understand it via hearsay from Defendant), they make no allegation of any material falsehood provided by Dr. Dietz to Defendant. (*See* Dkt. No. 665 at 2 (alleging Dr. Dietz used the word "crazy" as a pejorative term for a mental health mitigation defense).) Defendant was not deceived into relinquishing any right. His exercise of his right to self-representation was a knowing and intelligent exercise of a fundamental right protected under our Constitution. *Faretta v. California*, 422 U.S. 806, 820 (1975) ("Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not his defense.").

The Court therefore **DENIES** Defendant's motion to strike the death penalty as a possible punishment (Dkt. No. 665).

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

December 7, 2016
Charleston, South Carolina